UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NATHAN SAUNDERS,

        Petitioner,

V.

DANIEL SENKOWSKI,

        Respondent.

**REPORT AND RECOMMENDATION**

03-CV-660

---

## I. INTRODUCTION

Petitioner Nathan Saunders, through his attorney of record,[1] commenced this action seeking habeas corpus relief under 28 U.S.C. § 2254. Petitioner is an inmate at the Clinton Correctional Facility. In 1995, he was convicted in a New York State court of two counts of First Degree Kidnapping, Second Degree Kidnapping, Second Degree Assault, Second Degree Escape, two counts of Endangering the Welfare of a Child, and First Degree Unlawful Imprisonment and was sentenced to a term of imprisonment. Petitioner contends that his conviction was imposed in violation of his constitutional rights and should be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 13).

---

[1] Petitioner's habeas corpus counsel is Stephanie Batcheller, Esq. from the New York State Defenders Association in Albany, New York.

## II. BACKGROUND

**A.     Facts**

The following background is taken from the record of Petitioner's state court proceedings and is undisputed by the parties.  On the morning of August 29, 1994, Petitioner, an inmate at the Hudson Correctional Facility in Columbia County, was on a work detail at a Department of Correctional Services ("DOCS") Training Academy in Albany.[2] (T at 565).[3]

At approximately 9:15 in the morning, Petitioner walked away from his work detail without permission to do so, taking a knife with him.  (T at 567, 585).  Petitioner then went to the home of Passion Jones, his fifteen-year old ex-girlfriend and the mother of his child. (T at 268).  When Petitioner arrived at Jones's house, he came inside and locked the door. According to the trial testimony, Petitioner assaulted Jones and held Jones, her mother, and his eight-month old daughter hostage.  (T at 272-74).  The police were notified and an approximately fifteen hour standoff began.  The standoff ended when Petitioner fell asleep at approximately 4:00 a.m. on August 30, 1994.  (T at 448).  The police administered a debilitating spray and apprehended Petitioner.  (T at 364-65, 448-49).

On October 11, 1994, an Albany County grand jury issued a ten count indictment, charging Petitioner with three counts of Kidnapping in the First Degree, in violation of New York Penal Law ("N.Y.P.L.") §135.25(2)(a), and §1355.25(2)(b)[4]; two counts of Kidnapping

---

[2] In April of 1994, Petitioner pled guilty to a charge of Attempted Criminal Sale of a Controlled Substance in the Third Degree, a Class C Felony, for which he was confined at the Hudson Correctional Facility.

[3] References preceded by "T" are to the transcript pages of Petitioner's trial.

[4] Unless otherwise indicated, all references to the N.Y.P.L. are to McKinney 1998.

in the Second Degree, in violation of N.Y.P.L. §135.20; Escape in the Second Degree, in violation of N.Y.P.L. § 205.10(2); Assault in the Second Degree, in violation of N.Y.P.L. § 120.05(2); Criminal Possession of a Weapon in the Third Degree, in violation of N.Y.P.L. §265.02(1);and two counts of Endangering the Welfare of a Child, in violation N.Y.P.L. §260.10.

**B.    State Trial Court Proceedings**

The Honorable Thomas W. Keegan, Albany County Court Judge, presided over Petitioner's trial, which began on June 26, 1995. Petitioner was represented at trial by Michael Magguilli, Esq., an attorney with the Albany County Public Defender's Office. At the close of the case, the trial court instructed the jury on the lesser included offense of Unlawful Imprisonment in the First Degree. (T at 657). The count of Criminal Possession of a Weapon in the Third Degree was not presented to the jury. (T at 657).

On June 29, 1995, the jury found Petitioner guilty of two counts of Kidnapping in the First Degree, Kidnapping in the Second Degree, Escape in the Second Degree, Assault in the Second Degree, two counts of Endangering the Welfare of Child and Unlawful Imprisonment. (T at 749-55).

On July 25, 1995, Petitioner was sentenced by Judge Keegan as a second felony offender. (S at 14).[5] Petitioner was sentenced to concurrent terms of twenty-five years to life for his convictions of two counts of Kidnapping in the First Degree, twelve and one-half years to twenty-five years for his conviction of Kidnapping in the Second Degree (also to run

---

[5] References preceded by "S" are to the transcript pages of Petitioner's sentencing hearing held on July 25, 1995. The sentencing minutes can be found in the State Court Record on Appeal, Volume VII.

3

concurrent to his Kidnapping in the First Degree sentence), two to four years on one count of Unlawful Imprisonment in the Second Degree (to run consecutive to the Kidnapping sentences), two to four years for his conviction of Escape in the Second Degree (to run consecutive to the other sentences imposed), three and one-half years to seven years for his conviction of Assault in the Second Degree (to run concurrently with the kidnapping sentences), one year for two counts of Endangering the Welfare of a Minor (to run concurrently with each other and with the other sentences imposed).  (S at 14-17). Petitioner's aggregate sentence was twenty-nine years to life.  (S at 16).

### C.     State Appellate Proceedings

Petitioner appealed his conviction to the Appellate Division, Third Department, of the New York State Supreme Court.  Petitioner raised the following six arguments in support of his appeal: (1) the conviction for Kidnapping in the First Degree was against the weight of the evidence,  (2) there was prosecutorial misconduct based on a failure to turn over photographic evidence, improper remarks to the jury during *voir dire* and summation, and a misstatement regarding "key" evidence, (3) there was juror misconduct, (4) he was not permitted to testify at his grand jury proceeding, depriving him of his right to be represented by counsel, (5) the trial court erred in allowing evidence of his prior criminal history, and (6) his sentence was unduly harsh and excessive.

In a decision issued on May 13, 1999, the Appellate Division affirmed Petitioner's conviction, but modified his sentence.  People v. Saunders, 691 N.Y.S.2d 197 (3rd Dep't 1998).  Specifically, the Appellate Division modified Petitioner's sentence

> by reducing the minimum terms imposed upon the convictions for kidnapping in the

>  first degree under counts one and two of the indictment to 20 years and by directing that the sentences imposed upon the convictions for unlawful imprisonment in the first degree and escape in the second degree run concurrently with the sentences imposed upon the convictions for kidnapping in the first degree and kidnapping in the second degree

Id. at 201-202.  On November 18, 1999, the Court of Appeals denied Petitioner's motion for leave to appeal the decision of the Appellate Division.  People v. Saunders, 94 N.Y.2d 829 (1999).

On February 13, 2001, Petitioner filed a CPL § 440 motion to vacate his judgment of conviction, alleging trial errors and ineffective assistance of counsel.  The trial court denied Petitioner's motion by Decision and Order dated May 30, 2001.

Thereafter, Petitioner filed an appeal to the Appellate Division, which affirmed the trial court's decision on January 23, 2003.  People v. Saunders, 753 N.Y.S.2d 620 (3rd Dep't 2003).  Leave to appeal that decision to the Court of Appeals was denied on May 20, 2003.  People v. Saunders, 763 N.Y.S.2d 8 (2003).

### D.     Federal Habeas Corpus Proceedings

Petitioner, represented by habeas corpus counsel, commenced this action on May 27, 2003, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Docket No. 1).  However, Petitioner was directed to file an Amended Petition so this Court could determine whether his habeas corpus petition was timely filed.  (Docket No. 4). Petitioner filed his Amended Petition on July 9, 2003.  (Docket No. 6).  Thereafter, Respondent filed submissions in opposition.  (Docket No. 10 & 11).  On October 2, 2003, Petitioner filed a Traverse (reply pleading) in response to Respondent's submissions.  (Docket No. 12).

For the reasons that follow, the Court recommends that the Petition for a writ of habeas corpus be DISMISSED as untimely.

### III. DISCUSSION

I.   **Statute of Limitations Under AEDPA**

One of the changes wrought by AEDPA[6] is the imposition of a one-year limitations period on habeas petitions which begins to run from the latest of several events, one of which is the date on which the challenged state court judgment becomes final. See 28 U.S.C. § 2244(d)(1); Bennett v. Artuz, 199 F.3d 116, 118 (2d Cir.1999), *aff'd*, 531 U.S. 4, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000).

In this case, as in most cases, the one-year period runs from the date the state conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). The state conviction becomes final for AEDPA purposes when the petitioner's time to seek direct review in the United States Supreme Court by writ of certiorari expires. Williams v. Artuz, 237 F.3d 147, 151 (2d Cir.2001).

Here, that period expired 90 days after the New York Court of Appeals denied Petitioner's first motion for leave to appeal. Pratt v. Greiner, 306 F.3d 1190, 1195 n. 1 (2d Cir.2002). Therefore, Petitioner's judgment of conviction became final on February 16, 2000, which was 90 consecutive chronological days from November 18, 1999, which is when the

---

[6]Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (1996).

New York Court of Appeals denied leave to appeal the Appellate Division's affirmance of Petitioner's conviction. Petitioner's one-year limitations period thus would have expired one year later, on February 16, 2001.

However, AEDPA further provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation." 28 U.S.C. § 2244(d)(2); Bennett, 199 F.3d at 119.

In Bennett, the Second Circuit held that a state court application or motion for collateral relief is "'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures." Bennett, 199 F.3d at 120; see also Carey v. Saffold, 536 U.S. 214, 217, 220-21, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002).

In the present case, Petitioner filed his first and only state court motion for collateral relief on February 13, 2001, three (3) days before the AEDPA limitations period would otherwise have expired. The parties agree that the statute of limitations was tolled pursuant to § 2244 (d)(2) while Petitioner's CPL § 440.10 and § 440.20 motions were under review by the New York state courts.

It is further undisputed that the tolling ended and that the statute of limitations began running again on May 20, 2003, when the New York Court of Appeals denied Petitioner's motion for leave to appeal. As such, the limitations period under § 2244 (d)(1) expired on May 23, 2003, three days after the Court of Appeals issued its denial. The instant Petition was filed on May 27, 2003, four days after the expiration of the applicable statute of limitations.

7

## II.      Equitable Tolling

Petitioner, through his attorney, essentially concedes that the Petition is time-barred. However, Petitioner urges this Court to equitably toll the limitations period and consider the Petition on the merits. Specifically, Petitioner argues that, due to alleged delays in mail delivery and the Memorial Day holiday, his state court attorney did not receive notice of the Court of Appeals's decision until May 27, 2003. Petitioner contends that his counsel acted diligently upon receiving the notice and filed the Petition only hours later.

The Supreme Court addressed the question of equitable tolling of AEDPA's limitations period in a very recent decision. Lawrence v. Florida, _ U.S. _, 127 S. Ct. 1079 (U.S. Feb. 20, 2007). In Lawrence, the Court assumed without analysis that equitable tolling was available; noting that "[t]o be entitled to equitable tolling, [the petitioner] must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed.2d 669 (2005)).

The Second Circuit has recognized the court's authority to equitably toll AEDPA's one-year limitations period, but has held that "[e]quitable tolling applies only in the 'rare and exceptional circumstance.'" Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). As this Court has previously noted, "[i]n order to justify equitable tolling . . ., the petitioner must show that 'extraordinary circumstances' prevented him from filing his petition on time." Gant v. Goord, 430 F. Supp. 2d 135, 139 (W.D.N.Y. 2006). In addition, the petitioner must show that the alleged extraordinary circumstances were "beyond his control." Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001).

As noted above, Petitioner urges that the apparent mail delay and federal holiday

weekend constitute "extraordinary circumstances" sufficient to justify equitable tolling. For the following reasons, this Court finds Petitioner has not demonstrated that equitable tolling is warranted in this particular case.

A very similar factual situation was presented in Spencer v. Sutton, 239 F.3d 626 (4th Cir. 2001). Although Spencer is not binding precedent, this Court finds the Fourth Circuit's analysis persuasive. In that case, the court held that even if an "inordinate delay" in the delivery of the mail could arguably be considered grounds for equitable tolling, "the *ordinary time that it takes to deliver the mail* [cannot] be regarded as a 'circumstance[] external to [a] party's own conduct' within the contemplation of the equitable tolling doctrine." Id. at 630. As the Fourth Circuit explained,

> Every person knows, or should know, that it can take at least several days to receive mail even from within the same postal jurisdiction, and he can, and may reasonably be required to, adjust his conduct accordingly. Ordinary delivery time is not a "rarity," nor is the charge of knowledge of such to the habeas petitioner "unconscionable."

Id.

In the present case, Petitioner argues that the mail delay was extraordinary. The Court of Appeals' Order was apparently mailed on May 20, 2003. Petitioner, through his counsel, contends that because of the Memorial Day weekend, the letter was not received by Petitioner's state court counsel until Tuesday, May 27th, the first business day after Memorial Day.

As a threshold matter, this Court is unwilling to declare that mail delays occasioned by federal holidays, which occur several times throughout the year, are "extraordinary." Moreover, Petitioner's deadline to file for habeas relief expired on Friday, May 23, 2003. As such, any delay occasioned by the Memorial Day holiday occurred *after* Petitioner's deadline

had already expired.

Additionally, Petitioner's own delay in seeking collateral review is the reason why he had only three days from the Court of Appeals' decision to file for habeas relief.  In Spencer, as in this case, the petitioner waited until shortly before the expiration of the AEDPA statute of limitations before filing for collateral review under state law.  The Spencer petitioner sought state collateral review one day before the federal statute of limitations expired.  Id. at 630.  As noted above, Petitioner filed his CPL § 440 motion three days before his habeas time period would otherwise have expired.  Petitioner, like his counterpart in Spencer, failed to offer any excuse or reason for waiting until the "eleventh hour" to seek state court collateral review.

Furthermore, there is no indication in the record that Petitioner notified the Court of Appeals of this fact and/or that Petitioner made any efforts to ensure that counsel received notification of the Court of Appeals's decision in an expedited fashion (*e.g.* via facsimile or express mail).  In other words, the unexplained delay in seeking collateral review and apparent failure to seek expedited notification reduced Petitioner's "margin of error," such that even a modest mail delay rendered his Petition untimely.

In sum, this Court finds that Petitioner has failed to demonstrate that the circumstances which prevented him from filing a timely petition were either "extraordinary" or "beyond his control."  As such, Petitioner is not entitled to equitable tolling of the limitations period, which expired before he filed his Petition.  It is therefore recommended that the

Petition be DISMISSED as untimely.[7]

### IV. CONCLUSION

Based upon the foregoing, it is recommended that the Petition be DISMISSED. However, because the dismissal is not based upon a consideration of the merits, it is recommended that a certificate of appealability be granted to determine whether equitable tolling is appropriate under the facts presented in this particular case. See Muller v. Greiner, No. 03-Civ-1844, 2004 WL 97687, at *4 (S.D.N.Y. 2004), aff'd, 2005 WL 1712964 (2d Cir. 2005)(stating that because dismissal is not based on a consideration of the petition's merit, a certificate of appealability is appropriately granted for the limited purpose of determining whether equitable tolling is warranted).

                                            Respectfully submitted,

*[signature]*

Victor E. Bianchini
United States Magistrate Judge

DATED:     March 8, 2007
                Syracuse, New York

---

[7] Some courts in this Circuit have held that a credible claim of actual innocence may be a basis for equitable tolling, although it appears that the Second Circuit has not yet decided that issue. See Doe v. Menefee, 391 F.3d 147, 154 (2d Cir. 2004); Garcia v. Portuondo, 334 F. Supp. 2d 446, 462 (S.D.N.Y. 2004); Ford v. Brunelle, No. 98-CV-778, 2005 WL 3115868, at *2 n. 2 (W.D.N.Y. Nov. 22, 2005). In this particular case, there is no need for this Court to reach this issue. Petitioner does not raise a claim of actual innocence as a basis for equitable tolling.

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

March 8, 2007

Victor E. Bianchini
United States Magistrate Judge